UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANGELO MORALES,

                Plaintiff,

-v-                                                    No. 18-CV-3625-LTS-GWG

C&S WHOLESALE GROCERS, INC.,

                Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Angelo Morales ("Plaintiff") brings this action against Defendant C&S Wholesale Grocers, Inc. ("Defendant"), asserting causes of action for negligence and violations of New York Labor Law (N.Y. Labor Law § 200 et seq), in connection with an injury that he suffered at work. Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket entry no. 72.) This Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332. The Court has considered carefully the parties' submissions, and, for the following reasons, Defendant's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

        The following facts are undisputed unless otherwise indicated.[1] On March 15, 2015, Plaintiff suffered a workplace accident. (Docket entry no. 1 ("Compl.") ¶ 1-2.) Plaintiff

---

[1]     Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to the underlying evidentiary submissions.

was employed as a contractor with Rehrig Pacific Logistics ("RPL"), and on the day in question, he was assigned to perform "trailer stripping" work at Defendant's warehouse in Newburgh, New York.  (Docket entry no. 74 ¶ 15.)  Defendant is a third-party wholesaler of grocery items, and the Newburgh warehouse was used as a site for the loading and unloading of truck trailers. (Docket entry no. 74-7 ("Def. Depo. Tr.") at 22-25.)  As part of Plaintiff's job responsibilities at the warehouse, he would "strip" or remove merchandise, pallets, and goods from truck trailers that had returned from making deliveries to supermarkets, as well as clean out the trucks after emptying them.  (Docket entry no. 74 ¶ 15.)

To remove the pallets of goods from the truck trailers, Plaintiff utilized a motorized standing pallet jack that was owned and maintained by Defendant.  (Docket entry no. 74 ¶¶ 15-16; docket entry no. 73 ("Def. Rule 56.1 St.") ¶ 3.)  A motorized standing pallet jack is a piece of equipment akin to a forklift that is used to pick up, lift, move, and unload pallets of goods.  (Id. ¶ 15-16; Def. Rule 56.1 St. ¶ 3.)  To operate this particular pallet jack, the operator stands on a small round platform at the back of the machine—the platform is elevated approximately two feet above the ground—and uses a throttle handle to steer the machine and lift the freight.  (Docket entry no. 80-1 ("Pl. Rule 56.1 St.") ¶ 7; Def. Depo. Tr. at 78-80; docket entry no. 74-5 ("Pl. Depo. Tr.") at 57-58.)  There are "no seat belts or safety devices" on the pallet jack to prevent the operator from falling off, (Pl. Rule 56.1 St. ¶ 8), but there is a "grab rail" that the operator may hold on to "for security while [] standing" (Def. Depo. Tr. at 78). Plaintiff received training on how to operate a pallet jack upon being hired, but he was not formally certified or licensed to operate a pallet jack.  (Pl. Depo. Tr. at 73-76.)

On the date of the incident, Plaintiff conducted a pre-trip inspection prior to using the pallet jack and did not discover anything amiss with the equipment.  (Pl. Depo Tr. at 110-12.)

He began operating the pallet jack to remove materials from a parked truck trailer and take them into the warehouse. (Id. at 120.) The unloading process featured a drop plate—a metal ramp used to bridge the gap between the truck bed and the warehouse floor—to facilitate loading and unloading. (Pl. Rule 56.1 St. ¶ 2.) The drop plate here was built-in to the warehouse and could be extended or retracted hydraulically by pushing buttons at the side of the warehouse bay doors. (Id. ¶ 6; Def. Depo. Tr. at 29.)

On the morning of the incident, Plaintiff first completed the stripping, offloading, and cleaning of a truck located at bay door number 351 in the warehouse, which took about half an hour and proceeded without incident. (Pl. Depo Tr. at 120-24.) Plaintiff then drove the pallet jack to the adjacent bay door, number 350, and began unloading the next truck. (Id. at 125-26.) As Plaintiff was backing out of this truck, the wheels of the pallet jack become stuck in a small gap between the end of the drop plate and the warehouse floor, thereby causing him to fall off the pallet jack and land on the metal lift plate on his right side. (Id. at 128-38; Def. Rule 56.1 St. ¶ 3; Pl. Rule 56.1 St. ¶ 10.)

After a co-worker came to check on him, Plaintiff composed himself and got up to inspect the pallet jack for damage and, when the machine seemed intact, he got back on the pallet jack to finish removing the final items from the truck. (Docket no. 80-4, at 3; Pl. Depo. Tr. at 150-53.) During this second pass, the wheels got stuck in the same gap and Plaintiff fell off the pallet jack for a second time, this time landing on his feet. (Docket no. 80-4, at 3; Pl. Rule 56.1 St. ¶ 9-11; Def. Rule 56.1 St. ¶ 4.) As a result of being thrown off the pallet jack, Plaintiff suffered injuries to his neck, shoulder, knee, ankle, and head; after his second fall, Plaintiff left work to seek medical treatment. (Pl. Rule 56.1 St. ¶ 12; docket entry no. 80-4, at 3.) Plaintiff did not inspect the pallet jack after the second time that he was thrown off, but he suspected that

the cause of the accident was a loose wheel becoming lodged in the drop plate gap.  (Pl. Depo. Tr. at 152-58.)  There were no witnesses to Plaintiff's accident.  (Def. Rule 56.1 St. ¶ 10.)

Plaintiff later filed a workplace Accident Investigation Report regarding the incident, noting that he had suffered a personal injury after being thrown from the pallet jack twice, that he had sought outside medical treatment, and that he had "concerns [that] the equipment being used [was] faulty."  (Docket entry no. 80-4.)  Plaintiff filed suit against Defendant in the New York Supreme Court, and the case was thereafter removed by Defendant to this Court.  (Docket entry no. 1.)  The Complaint stated claims for common law negligence and violation of the New York Labor Law ("NYLL") sections 200, 240(1), and 241(6).  (Id.)  The parties conducted discovery, and Defendant filed a motion for summary judgment.  (Docket entry no. 72.)  Plaintiff filed papers in opposition, and Defendant filed a reply.  (Docket entry nos. 80, 83.)

DISCUSSION

Summary judgment is warranted when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is considered material when it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court views the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021).  Summary judgment is also appropriate when the movant submits undisputed evidence "that negates an essential element of

the non-moving party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017).

Plaintiff asserts three claims under NYLL sections 240(1), 200, and 241(6), as well as a common law negligence claim.  As explained below, Plaintiff's claims under NYLL sections 240(1) and 241(6) fail as a matter of law, but the Court concludes that there are triable issues of fact with regard to Plaintiff's claim under NYLL section 200 and his claim for common law negligence.

NYLL Section 240(1)

NYLL section 240(1), also known as the Scaffolding Law, protects workers from the "pronounced risks arising from construction worksite elevation differentials." Runner v. New York Stock Exch., Inc., 13 N.Y.3d 599, 603 (N.Y. 2009).  It "imposes upon owners, contractors, and their agents a nondelegable duty to provide workers proper protection from elevation-related hazards." Zoto v. 259 W. 10th, LLC, 189 A.D.3d 1523, 1524 (N.Y. App. Div. 2020).  To establish liability under this statute, a plaintiff must show "(1) the existence of an elevation-related hazard of the type encompassed by the statute, and (2) an injury proximately caused by the absence of proper protection from the hazard." Steinman v. Morton Int'l, Inc., 519 F. App'x 48, 50 (2d Cir. 2013).

To be eligible for the protections of section 240(1), a plaintiff must first establish that he was injured while performing "construction work" within the meaning of the statute.  Specifically, the plaintiff must show that "he or she was injured during the 'erection, demolition, repairing, altering, painting, cleaning, or pointing of a building or structure.'" Washington-Tatum v. City of New York, 205 A.D.3d 976, 977 (N.Y. App. Div. 2022) (quoting N.Y. Labor

Law § 240(1) (McKinney)).  Defendant argues that unloading pallets from a truck at a grocery warehouse is not the type of "construction work" that implicates section 240(1).  Plaintiff disagrees, asserting that the statute applies to work activities not conducted on a construction site, and further asserting that the statute applies because part of Plaintiff's job duties included "cleaning."

The Court concludes as a matter of law that Plaintiff cannot establish that he was injured while performing construction work within the meaning of NYLL section 240(1). "While the reach of section 240(1) is not limited to work performed on actual construction sites . . . the task in which an injured employee was engaged must have been performed during 'the erection, demolition, repairing, altering, painting, cleaning, or pointing of a building or structure.'"  Martinez v. City of New York, 93 N.Y.2d 322, 326 (N.Y. 1999) (internal citation omitted).  Of these seven categories of tasks, the only task that Plaintiff proffers as applicable here is "cleaning."  (See docket entry no. 80 ¶ 10.)  To determine whether a given task counts as "cleaning" under section 240(1), New York courts employs a four-factor test:

> Outside the sphere of commercial window washing . . . an activity cannot be characterized as 'cleaning' under the statute, if the task: (1) is routine, in the sense that it is the type of job that occurs on a daily basis, weekly, or other relatively-frequent and recurring basis as part of the ordinary maintenance and care of commercial premises; (2) requires neither specialized equipment or expertise, nor the unusual deployment of labor; (3) generally involves insignificant elevation risks comparable to those inherent in typical domestic or household cleaning; and (4) in light of the core purpose of Labor Law § 240(1) to protect construction workers, is unrelated to any ongoing construction, renovation, painting, alteration, or repair project.

Soto v. J. Crew Inc., 21 N.Y.3d 562, 568 (N.Y. 2013) (emphasis added).

Whether an activity counts as "cleaning" is "an issue for the court to decide after reviewing all of the factors."  Soto, 21 N.Y.3d at 568-69.  Here, Plaintiff testified that his regular

job duties included sweeping out the trucks and "cleaning up the trucks" following each unload job and keeping the bay door area "clear for the other workers." (Pl. Depo. Tr. at 38, 120-22.) He testified that he used a broom to clean out the trucks, and that it would take him approximately 10 to 15 minutes to clean out each truck. (Id. at 122.) Applying the four Soto factors, it is apparent that Plaintiff was not injured while engaged in "cleaning" within the meaning of the statute. First, the cleaning was "routine," as it happened in the course of Plaintiff's daily job duties. Second, the cleaning did not require specialized equipment or expertise, as Plaintiff only used a broom. Third, there has been no showing that sweeping out the truck or keeping the bay area clean involved any particular elevation risks. Fourth, as explained below in further detail (infra at 8-9), the cleaning appears to have been wholly unrelated to any ongoing construction, renovation, painting, alteration, or repair project. Finally (and most importantly), Plaintiff does not allege that he was injured while cleaning—he alleges that he fell from a pallet jack, while performing an entirely different set of job duties at the warehouse. See Martinez, 93 N.Y.2d at 326 (finding that section 240(1) was inapplicable because "none of the activities enumerated in the statute was underway" at the time of plaintiff's injury).

Accordingly, the Court concludes that Plaintiff's section 240(1) claim must fail as a matter of law, because, even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude that Plaintiff was engaged in "construction work" within the meaning of section 240(1) at the time he sustained his injuries. Summary judgment is awarded to Defendant as to this claim.

NYLL Section 241(6)

NYLL section 241(6) sets out workplace safety rules that apply to "[a]ll areas in which construction, excavation, or demolition work is being performed." N.Y. Labor Law § 241(6) (McKinney).  It imposes a "duty of reasonable care upon owners and contractors to provide reasonable and adequate protection and safety to persons employed in, or lawfully frequenting, all areas in which construction, excavation, or demolition work is being performed." Song v. CA Plaza, LLC, 172 N.Y.S.3d 640, 641 (N.Y. App. Div. 2022).  To be eligible for the protections of this statute, a plaintiff must show that, at the time of the injury, he was "working in a construction area within the meaning of Labor Law § 241(6)." Flores v. ERC Holding LLC, 87 A.D.3d 419, 421 (N.Y. App. Div. 2011).  "[T]he particular task performed by a plaintiff need not constitute 'construction, excavation, or demolition' so long as the task is sufficiently connected to a larger project that qualifies as 'construction, excavation, or demolition.'" In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 44 F. Supp. 3d 409, 437 (S.D.N.Y. 2014).  "However, if the work is unrelated or insufficiently connected to any 'construction, excavation, or demolition,' it is not covered under section 241(6)." Id.

Here, Plaintiff has made no showing that he was performing work in a construction area, or that any "construction, excavation, or demolition" was occurring at the warehouse premises when he was injured.  Although Plaintiff alleged in his Complaint that Defendant "entered into an agreement with RPL to perform work, labor, and services on [Defendant's] premises, including the disassembling, demolishing, construction, renovation, alteration, demolition, and repair on the premises, buildings and/or structures" (Compl. ¶ 31), Defendant denied these allegations in its answer (docket entry no. 74-3 ¶ 16), and Plaintiff has proffered no evidence to support his conclusory allegation that RPL employees were performing construction work at Defendant's warehouse.  Indeed, the work contract entered into between

Defendant and RPL makes no mention of any construction, excavation, or demolition work.[2] Accordingly, because the undisputed evidence shows that the work Plaintiff performed at Defendant's warehouse was wholly unrelated to any construction, excavation, or demolition work, Plaintiff's injury is not covered by section 241(6), and his claim under this statute must fail as a matter of law. Summary judgment is awarded to Defendant as to Plaintiff's NYLL section 241(6) claim.

Negligence / NYLL Section 200

"Labor Law § 200 codifies landowners' and general contractors' common law duty to maintain a safe workplace." Wojcik v. 42nd St. Dev. Project, 386 F. Supp. 2d 442, 455 (S.D.N.Y. 2005). The law requires that a workplace "be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places." N.Y. Labor Law § 200(1) (McKinney). Section 200 "applies to all workplaces and does not require a worker to be engaged in 'construction, excavation, or demolition.'" In re World Trade Center Lit., 44 F. Supp. 3d at 431. "Because section 200 is a codification of common law negligence, courts analyze the claims simultaneously." Id. at 445 n.5; see also Sheerin v. Tutor Perini Corp., No. 1:18-CV-7952-ALC-SLC, 2022 WL 992917, at *9 (S.D.N.Y. Mar. 31, 2022) ("Courts generally analyze section 200 and common law negligence simultaneously."). The Court will accordingly

---

[2] Instead, the contract states that RPL is to provide services such as "warehouse supervision," "unload[ing] of trailers," "keep[ing] the designated area . . . in good and clean condition," and "perform[ing] related administrative functions." (See docket entry no. 74-8 ¶ 3.1.) In an affidavit, Defendant stated that RPL employees were involved in "removing returned merchandise pallets, empty pallets, cardboard bails, garbage and debris, as well as sorting pallets inside the warehouse and processing totes." (Docket entry no. 74-10 ¶ 4.)

analyze Plaintiff's common law negligence claim concurrently with his NYLL section 200 claim.

"Cases involving Labor Law section 200 fall into two broad categories: namely, those where workers are injured as a result of dangerous or defective premises conditions at a work site, and those involving the manner in which the work is performed." Lincho v. Nat'l R.R. Passenger Corp., 338 F. Supp. 3d 343, 357 (S.D.N.Y. 2018) (emphasis added). Here, Plaintiff asserts that the premises liability standard applies, because he was injured by two dangerous or defective conditions at the work site: namely, the overly-large gap between the drop plate and warehouse floor and the faulty wheels on the pallet jack.

When a plaintiff's claim is "based upon premises liability, the landowner's duty is to provide the worker with a safe place to work." Gyllenhammer v. Am. Nat'l Red Cross, No. 315-CV-1143-BKS-DEP, 2017 WL 11295794, at *14 (N.D.N.Y. July 13, 2017). In order for a landowner to be liable under the premises liability theory, "it must be established that a defective condition existed and that the landowner affirmatively created the condition or had actual or constructive notice of its existence." Hamm v. Rev. Assocs., LLC, 202 A.D.3d 934, 937 (N.Y. App. Div. 2022) (citation omitted). Further, the dangerous or defective condition "must be a proximate cause of the accident." DiSanto v. Spahiu, 169 A.D.3d 861, 862 (N.Y. App. Div. 2019) (citation omitted). "In a premises liability case, a defendant landowner, or a party in possession or control of real property, moving for summary judgment has the burden of establishing, prima facie, that it did not create the alleged dangerous condition or have actual or constructive notice of its existence." Hamm, 202 A.D.3d at 937. The Court will, accordingly, analyze this premises liability claim in three steps: (1) whether a dangerous or defective

condition existed; (2) whether Defendant had actual or constructive notice of these conditions; and (3) whether these conditions were the proximate cause of Plaintiff's accident.

### Dangerous or Defective Condition

"Whether a dangerous or defective condition exists on the property of another so as to create liability [under section 200] depends on the particular facts and circumstances of each case and is generally a question of fact for the jury." Hamm, 202 A.D.3d at 937. However, summary judgment may be appropriate when the defect is so "trivial [in] nature" that "no issue of fact is presented." See Trincere v. Cnty. of Suffolk, 90 N.Y.2d 976, 977-78 (N.Y. 1997). In this case, the Court is unable to conclude as a matter of law that the defects alleged by Plaintiff were trivial in nature. As for the alleged gap in the drop plate, neither party has submitted any detailed evidence regarding its condition, either before or after the accident—there are no photographs of the drop plate, no inspection reports, and no specific testimony describing its condition. As for the allegedly faulty wheel, a maintenance report that was completed on the pallet jack one day after Plaintiff's accident states that the caster wheel was "worn down to the metal [for] at least half of the wheel . . . [and the] axel was so bad it had to be cut out." (Docket entry no. 80-7, at 2.) This evidence is sufficient to create a factual question as to whether the wheel or drop plate constituted a dangerous or defective condition, and accordingly this issue is properly determined by the jury.

### Notice

"[A] property owner moving for summary judgment . . . has the initial burden of showing" that they did not have "actual or constructive notice of" the defective condition. Nicoletti v. Iracane, 122 A.D.3d 811, 812 (N.Y. App. Div. 2014). Actual notice exists where a defendant "was in fact aware" of the existence of a defect "prior to the accident." Pianforini v.

Kelties Bum Steer, 258 A.D.2d 634, 635 (N.Y. App. Div. 1999).  In contrast, a defendant "has constructive notice of a [defect] when the condition is visible and apparent, and has existed for a sufficient length of time to afford the defendant a reasonable opportunity to discover and remedy it."  Hamm, 202 A.D.3d at 937-38.  Moreover, "the statutory duty to maintain a reasonably safe workplace implies a duty to make timely and adequate inspections for dangers that may reasonably be discovered."  In re World Trade Center Lit., 44 F. Supp. 3d at 433-34.

       Here, Defendant asserts (and Plaintiff does not dispute) that none of Defendant's employees had actual notice of any defective conditions on the drop plate or the pallet jack wheels.  However, the parties dispute whether constructive notice may be imputed to Defendant.  As for the gap in the drop plate, the Court concludes that Defendant has not met its initial burden of showing that it did not have constructive notice of the condition of the drop plate, due to the lack of information in the record.  The record contains no indication as to whether the gap in the drop plate was visible and apparent—as noted above, there record contains no photographs of the drop plate, no inspection reports, and no specific testimony describing its condition.  Further, Plaintiff correctly notes that the record includes no indication of whether or when Defendant last inspected the drop plate for any unsafe gaps, and thus the Court is unable to determine how long this condition may have existed.  See McLean v. 405 Webster Ave. Assocs., 98 A.D.3d 1090, 1093-94 (N.Y. App. Div. 2012) (considering the question of whether a defect existed for a sufficient length of time and whether it "should have been apparent upon visual inspection is generally a question of fact [for the jury]").

       As for the faulty wheels on the pallet jack, the Court likewise concludes that Defendant has not met its initial burden of showing that it did not have constructive notice of the condition of the wheels, due to conflicting evidence in the record.  See id. at 1094 (summary

judgment "not warranted" on premises liability claim when there was "conflicting evidence" as to whether the defendants had "constructive notice of the allegedly dangerous condition"). The maintenance report from the day after Plaintiff's accident indicated that the caster wheel of the pallet jack was certainly damaged—it was "worn down to the metal [for] at least half of the wheel . . . [and the] axel was so bad it had to be cut out." (Docket entry no. 80-7, at 2.) However, the evidence is conflicting as to when this damage was sustained, and how long it had existed at the time of Plaintiff's accident.

The last time that the pallet jack was inspected by a mechanic was on January 30, 2015 (approximately 1.5 months before Plaintiff's accident), when the pallet jack underwent regular preventative maintenance (which included replacing a wheel due to "normal wear"). (Docket entry no. 80-7, at 5.) According to Plaintiff, he did not see anything wrong with the pallet jack during his pre-trip inspection on the day of his accident (Pl. Depo. Tr. at 110-12) and he did not see anything wrong with it during his subsequent inspection (after he was thrown off for the first time) (id. at 151-53), but he did not conduct any inspection after he was thrown off for the second time. This account seems to suggest that the damage was likely sustained to the wheel after Plaintiff's second fall. However, the maintenance report from the day after the accident paints a different picture. It states that the cause of the accident was "due to the fact [that] the operator kept driving the jack like that even after he claims he did a pre inspection on it." (Docket entry no. 80-7, at 2.) This account appears to suggest that the damage was already apparent prior to Plaintiff's fall, and that perhaps Plaintiff was not thorough in his pre-trip

inspection of the pallet jack.[3]  Accordingly, due to these two conflicting factual accounts on the condition of the pallet jack wheels, this issue is properly decided by the jury.

Proximate Cause

"In order to withstand summary judgment, a plaintiff need only raise a triable issue of fact regarding whether defendant's conduct proximately caused plaintiff's injuries." Dos Santos v. Terrace Place Realty, Inc., 433 F. Supp. 2d 326, 334 (S.D.N.Y. 2006).  Plaintiff argues that he has raised a triable issue regarding whether the defects in the drop plate and pallet jack caused his injuries, but Defendant argues that Plaintiff cannot show causation because he can only speculate as to the cause of his injuries.  See, e.g., DiSanto, 169 A.D.3d at 863 (holding that plaintiff could not satisfy the proximate cause element of his NYLL section 200 claim where he "was unable to identify . . . the cause of his fall, without engaging in speculation").

While it is true that "mere speculation as to the cause of an accident" is insufficient to establish proximate cause "when there could have been many possible causes" of an accident, a plaintiff is not obligated to establish "direct evidence of causation"—proximate cause may be shown "by inference from the circumstances of the accident." DiSanto, 169 A.D.3d at 862 (citation omitted).  Defendant argues that Plaintiff cannot show proximate cause because he did not see, and cannot prove, why exactly the pallet jack wheels became stuck.  However, Plaintiff testified that "I believe [the wheels] got stuck on where that gap is [between] where the hinges are" and "the end of the drop plate that goes . . . into the warehouse."  (Pl. Depo. Tr. at 138.)  The Court concludes that this testimony goes beyond mere speculation as to the cause of the accident and is sufficient to raise a triable issue of fact as to proximate cause.

---

[3]  To the extent that Plaintiff's actions may (or may not) have contributed to causing his injury, any such issues of comparative negligence are for the jury.  See Baumann v. Town of Islip, 120 A.D.3d 603, 605 (N.Y. App. Div. 2014).

Thus, because Defendant has failed to meet its initial burden to show a lack of constructive notice, and because Plaintiff has raised triable issues of fact as to the existence of a defective condition and proximate cause, the Court denies Defendant's motion for summary judgment as to Plaintiff's claims for negligence and for violation of NYLL section 200.  See Hamm, 202 A.D.3d at 938 ("A defendant moving for summary judgment [on a section 200 claim] may prevail 'only when the evidence exonerates it as a matter of law for all potential concurrent causes of the plaintiff's accident and injury, and when no triable issue of fact is raised in opposition as to [the] relevant liability standard.'") (citation omitted).  These two claims should be determined by a jury.

Insurance Law Section 5104(a)

Defendant also argues that it is entitled to summary judgment because the injuries suffered by Plaintiff as a result of his accident did not constitute "serious injury" within the meaning of New York Insurance Law.  Section 5104(a) of the New York Insurance Law "place[s] limits on any recovery by a person involved in an automobile accident." Comba v. United States, 535 F. Supp. 3d 97, 106 (E.D.N.Y. 2021).  Specifically, the statute only permits a plaintiff to recover for non-economic loss if the plaintiff can show they suffered a "serious injury."  Id.  The statute applies to actions "for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state."   N.Y. Ins. Law § 5104(a) (McKinney).

The threshold question under this statute is whether Plaintiff's accident featured the "use or operation of a motor vehicle" within the meaning of the Insurance Law.  The Insurance Law uses the same definition of "motor vehicle" as the Vehicle and Traffic Law, which defines a motor vehicle as "every vehicle operated or driven upon a public highway which

is propelled by any power other than muscular power." N.Y. Ins. Law § 5102(f) (McKinney); N.Y. Veh. & Traf. Law § 311 (McKinney); N.Y. Veh. & Traf. Law § 125 (McKinney).

Defendant first contends that this definition is satisfied because Plaintiff was unloading a tractor trailer vehicle at the time of his injury, asserting that "use or operation" of a vehicle has been defined to include the loading or unloading of commercial trucks. The Court does not find this argument persuasive. The only case that Defendant cites in support of this proposition is Wagman v. Am. Fid. & Cas. Co., 304 N.Y. 490, 495 (N.Y. 1952)—a case which was decided long before the Insurance Law was enacted,[4] and which addressed the narrow issue of whether unloading a vehicle was covered by a particular insurance policy.

A better example is the more-modern case of Walton v. Lumbermens Mut. Cas. Co., 88 N.Y.2d 211 (N.Y. 1996), in which the New York Court of Appeals addressed the precise question at issue here. There, the plaintiff was injured "while unloading a truck at a supermarket loading dock" using a hydraulic ramp device called a "levelator," which suddenly "tipped over, throwing him to the ground [and] causing him to sustain injuries." Id. at 212-13. He thereafter sought to recover from the insurer of the truck, claiming that the Insurance Law applied because "he was unloading the vehicle at the time he was injured." Id. at 214. After reviewing the language, purpose, and history of the Insurance Law, the Court of Appeals ultimately concluded that the injury was not covered because it did not arise out of the "use or operation of a motor vehicle." Id. The court explained that "[t]he mere fortuity that plaintiff's injury occurred while he was engaged in unloading the truck does not support a claim for no-fault benefits because the vehicle itself was not a cause of the damage. The vehicle must be a proximate cause of the

---

[4] "New York's no-fault insurance law, formally known as the 'Comprehensive Automobile Insurance Reparations Act,' was enacted in 1973." Walton v. Lumbermens Mut. Cas. Co., 88 N.Y.2d 211, 214 (1996).

injury." Id. at 215.  Because the statute was adopted in order "to provide a system to compensate victims of vehicular accidents," the statute does not apply "when a party is injured by an instrumentality other than the vehicle itself." Id. at 215-16.  Here, just as in Walton, Plaintiff was injured while using a separate instrumentality (the pallet jack) to unload a truck, and the truck itself was not the proximate cause of his injury.  Accordingly, this is not the type of injury that was intended to be covered by the Insurance Law, and Section 5104(a) is inapplicable under this theory.

The Court also considers whether the motorized pallet jack that Plaintiff was using at the time of his injury may qualify as a "motor vehicle" within the meaning of the Insurance Law.  While it does not appear that any courts in this circuit have addressed whether a motorized pallet jack qualifies as a motor vehicle, several courts have analyzed this issue in the context of forklifts, which are operationally similar to a motorized pallet jack.  The consensus in New York courts is that "whether or not a forklift qualifies as a motor vehicle depends on whether it was principally designed for use off public roads." Brill v. Queens Lumber Co., No. 10-CV-1975-MKB, 2013 WL 1290948, at *3 n.2 (E.D.N.Y. Mar. 27, 2013); see, e.g., Mangra v. China Airlines, Ltd., 790 N.Y.S.2d 370 (N.Y. Civ. Ct. 2005) (concluding that a hi-lo forklift did not qualify as a "motor vehicle" under Vehicle and Traffic Law section 125 because it was "used in [a] warehouse and not on a public road," because "[a] forklift operator does not need to be specially licensed," because "a forklift . . . does not need to be registered with the Department of Motor Vehicles," and because "the overwhelming consensus [among other jurisdictions] is that a hi-lo forklift does not constitute a motor vehicle"); cf. Jebode v. Golden Oldies, Ltd., 907 N.Y.S.2d 437 (N.Y. Sup. Ct. 2010) (concluding that a forklift qualified as a "motor vehicle" under Vehicle and Traffic Law section 125 because it was registered with the Department of

Motor Vehicles, had a license plate and vehicle insurance, and was intended "to be operated on the public street").

Here, there is no evidence showing that the motorized pallet jack was designed for (or actually used on) any type of public road. Rather, the evidence demonstrates that Defendant's pallet jacks were used solely within the warehouse to load and remove materials from the truck trailers. (See Def. Depo. Tr. at 77-80.) The pallet jacks were battery-powered, had a top speed of 8 miles per hour, and were stored within the warehouse when not in use; and there is no indication they were registered with the Department of Motor Vehicles. (Id. at 79-87.) Accordingly, the pallet jack does not qualify as a "motor vehicle" within the meaning of the Insurance Law. Thus, because Plaintiff's injury did not feature the use or operation of any motor vehicle (whether the truck or the pallet jack), section 5104(a) is inapplicable to this claim as a matter of law.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to Plaintiff's claims under NYLL sections 240(1) and 241(6), and denied in all other respects. This Memorandum Opinion and Order resolves docket entry number 72.

The Court will refer the parties to the Mediation Program for settlement purposes by separate order. The parties must file a joint status letter by **September 29, 2023**; to the extent the parties have not reached settlement, the status letter must indicate whether both parties consent to trial of the case before Magistrate Judge Gorenstein (the parties' individual positions on the matter of consent must not be disclosed if they are not in agreement).

By separate Pretrial Scheduling Order, the Court will set the final pretrial conference in this case for **December 8, 2023, at 11:30 am**. The parties are directed to confer and make submissions in advance of the conference date in accordance with the scheduling order.

SO ORDERED.

Dated: New York, New York
August 8, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge